**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND, Debtor | Case No. 24-13093-PMM |
| JASON SCOTT JORDAN, Plaintiff, | Chapter 7 |
| v. | |
| ALAN CHRISTOPHER REDMOND, Defendant. | Adv. Proc. No. 25-0254 (PMM) |

**JASON SCOTT JORDAN'S PRE-TRIAL STATEMENT**

**I.      Certification of Inability to Confer.**

Undersigned counsel certifies that he's unable to confer with Alan Christopher Redmond. In certain motions that will be contemporaneously filed with this Statement, we will show the Court that Redmond has instructed the USPS to reject all mails submitted by Cornerstone Law Firm, LLC to his private residence at 2 High Road, Wyomissing, PA 19610. Additionally, as the Court well knows, Redmond failed to appear for the Court's pre-trial conference on June 9, 2026 at Adv. Proc. No. 24-0145.

In Exhibit 1, the Court may judicially notice from records of the U.S. District Court for the Eastern District of Pennsylvania ("District Court") that Redmond's bail has not been revoked in the criminal action pending against him. Nothing inhibits his ability to participate in this proceeding.

The Court may observe that Defendant's Pre-Trial Statement appears to be ghostwritten by an attorney in violation of the Bankruptcy Code which requires court-approval for legal representation of the Debtor. The drafting attorney included brackets as prompts for Redmond to

1

fill-in additional information, which Redmond failed to do. For instance, on Page 5, "[Defendant to add specific exhibits.]," on Page 6, "[Defendant to confirm estimate.]," etc.

## II.       Local Rule 7016-1 Requirements.

### A.       Basis of Jurisdiction, Core Proceeding, and Authority to Enter Final Judgment.

The Court has subject-matter jurisdiction for "core proceedings" arising under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Core proceedings non-exhaustively include "objections to discharges." Id. § 157(b)(2)(J). In this adversary proceeding arising under Redmond's involuntary Chapter 7 case, Jordan filed a Complaint on Dec. 29, 2025, objecting to Redmond's discharge under 11 U.S.C. § 727. Based on the foregoing, the Court's jurisdiction is competent.

The Court may enter a final order or judgment in this proceeding. By Answer, Redmond objected on the grounds of res judicata or collateral estoppel arising from Adv. Proc. No. 24-00145. [ECF No. 4 ¶ 2]. The Court may judicially notice its docket at Adv. Proc. No. 24-00145 to conclude that Redmond is incorrect and his objection should be overruled. In that proceeding, Jordan filed a Complaint on December 6, 2024, while the Main Case was an involuntary Chapter 11 petition, and whether Redmond's debts to Jordan were non-dischargeable under 11 U.S.C. § 523(a). The Court rendered summary judgment for Redmond on July 31, 2025, from which Jordan took an appeal. The Court converted the Main Case into a Chapter 7 petition by order filed September 24, 2025. [No. 24-13093, ECF No. 448]. On appeal, the District Court reversed this Court's grant of summary judgment on May 5, 2026 and remanded for further proceedings. [C.A. No. 5:25-CV-04712-JFL, ECF Nos. 10-11].

Consequently, Jordan did not have the previous ability or obligation to have objected to discharge under 11 U.S.C. § 727, which is applicable to Chapter 7 rather than Chapter 11 petitions.

When a case is converted to Chapter 7, "a new time begins" for the filing of "a complaint objecting to discharge." Fed. R. Bankr. P. 1019(b)(1) & (b)(1)(B). Moreover, no final judgment has been rendered in Adv. Proc. No. 24-00145. Under federal law, to trigger res judicata or collateral estoppel a prior "judgment must be on the merits." Brownback v. King, 592 U.S. 209, 215 (2021). "Res judicata" describes "two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it)," and "(2) issue preclusion long called 'collateral estoppel' (an issue of fact, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim)." Baker v. GMC, 522 U.S. 222, 233 n.5 (1998) (citing RESTATEMENT (SECOND) OF JUDGMENTS §§ 17-19, 27).

Moreover, in the Complaint in the instant proceeding, Jordan consented to the entry of a final order or judgment. [ECF No. 1 ¶ 1]. Redmond filed an Answer and did not object to the absence of his consent to enter judgment. [See ECF No. 4 ¶ 1]. Redmond therefore waived the issue of consent to enter judgment.

### B.    Jordan's Statement of Facts.

Due to Redmond's non-involvement, we may not represent to the Court whether any particular fact is "contested" or "uncontested," but will simply recite Jordan's position on the facts that are intended to be proved at trial.

Unless shown otherwise, all references to ECF docket entries are to the Main Case, i.e., Case No. 24-13093-PMM. The Exhibits referenced are filed on the docket at ECF No. 8-1.

On September 18, 2024, in a hearing before this Court in the Main Case, Redmond suborned perjury from his employee—Tonya Hatmaker—to the effect that creditor Ethan Shalter

3

had signed a mutual release when, in fact, the documents presented contained forged signatures purporting to be from Shalter.

Redmond conspired with Arthur W. Walsh, Jr., to hold out the latter publicly as an "Owner and CEO" of Seguro Medico, LLC, in order to help Defendant conceal his assets from creditors and from judicial process, when in fact Walsh was just an employee under the control and direction of Defendant.

Utilizing the services of Norman M. Valz, Esquire and other persons, Redmond purportedly transferred assets to Shannon Kroemmelbein for no consideration and while retaining control over the same, and created business entities using personal-identifying information and the Social Security Number of his wife, Shannon Kroemmelbein, to conceal assets from his creditors, from the Bankruptcy Court, and from the Chapter 7 Trustee. These entities include ABN Network, LLC, Digital Principles Corporation and Digital Bridge Network Corporation.

During his Rule 2004 Examination on April 17, 2025, his production in response to a Rule 2004 subpoena for documents, his Section 341 Examinations, and in repeated testimony before this Court including September 18, 2024 and October 1, 2024, Redmond has knowingly and falsely stated that he does not have access to accounts and depositories, or possession of business records or ownership or control of multiple business entities, including Seguro Medico, LLC, Benefits Now, LLC, Benefitz Plus, LLC, The Turning House of Reading 1, LLC, ABN Network, LLC, Red Horizon, LLC, Frontera LLC, Triquetra United, LP, Phase 1 Technology, LLC, Friends of Hurst, LLC, Digital Principles Corporation and Digital Bridge Network Corporation, and additional entities formed under Wyoming and Nevada law.

At the Original Section 341 examination, Debtor admitted he possessed a Discover credit card that was titled in his wife's name. [ECF No. 140-3, Ex. B, Tr. 12:7-8, 39:15-25]. He

additionally had a business credit card for Seguro Medico, LLC. [Id. at 39:15-25]. After closing

his Mid Penn bank accounts, Debtor admitted that he regularly deposited his income into accounts

in the name of his wife, Shannon Kroemmelbein. [Id. at 55:24-25 to 56:1-4]. An application to

retain Attorney William Rush, which is now withdrawn, initially disclosed that Rush Law Group,

LLC "received the following payments *from the Debtor*, for services rendered . . ." [ECF No. 103-

2 ¶ 5 (emphasis added)]. Upon further clarification, Attorney Rush explained that the payments

were not from the Debtor "but rather received funds from Third Parties on behalf of the debtor,

namely Shannon Kroemmelbein *and entities that Ms. Kroemmelbein controls*." [ECF No. 122 ¶

3 (emphasis added)].

Redmond disclosed that his wife is receiving $40,000 **per month** on income from interest

and dividends alone. [ECF No. 117, at 2 (Question 8b)]. This is separate from her take-home pay

from her employment in the Pottstown School District. [Id. (Question 7)].

On October 1, 2024 — during trial on the order for relief — Debtor freely admits that he

transferred assets to his wife to avoid his creditors:

> Q.    What assets did you transfer to Shannon Kroemmelbein upon your
> marriage?
>
> A.     There was a real estate company, ARC Realty, that I owned. And we
> received advice from our attorneys that we should put that company in tenants in
> the entirety. And that's what we did.
>
> Q.     Okay. And what was the reason for putting it in tenants by the entirety?
>
> [Objection overruled]
>
> A.     We put it in tenants in the entirety. We had talked to one of our attorneys.
> We were in a dispute with Par Funding. And we thought that was the best course
> of action to protect our households—to protect our—our house that we were living
> in at the time.

[ECF No. 140-3, Exhibit A, Tr. 103:25 to 104:1-122]. During the Section 341 hearing, Redmond admitted that Ms. Kroemmelbein neither paid any consideration for these transfers nor executed any prenuptial agreements. [ECF No. 140-3, Exhibit B, Tr. 56:5-11]. In other words, he gave away valuable assets to avoid creditors and for no consideration. Kroemmelbein is the sole titleholder to a $1,520,000.00 home in an upscale community, 2 High Road, Borough of Wyomissing, and Seguro Medico, LLC is paying the mortgage. The original lender was NP, Inc., which then subsequently assigned to another. [Exhibit D, Transaction ID 2022035110, Berks County Recorder of Deeds Office (Aug. 31, 2022)].

The Court should consider the following relevant timeline:

1/7/25:     Petitioning Creditors moved the Court [ECF No. 183] to compel Kroemmelbein and others to submit to a document production and Rule 2004 Examination.

1/30/25:    Kroemmelbein filed objections [ECF No. 241].

2/24/25:    The Court entered an Order [ECF No. 289], directing Kroemmelbein to produce such documents and submit to a Rule 2004 examination.

3/31/25:    Kroemmelbein filed a motion to quash [ECF No. 321].

4/2/25:     The Court entered an Order [ECF No. 330], denying Kroemmelbein's motion.

4/14/25:    Petitioning Creditors moved the Court [ECF No. 341] to compel compliance with its Order at ECF No. 289.

4/19/25:    Kroemmelbein's counsel filed a motion withdraw [ECF No. 348].

4/22/25:    The Court entered an Order [ECF No. 352], imposing $500.00 per day for each day that Kroemmelbein and others do not produce subpoenaed documents on and after May 2, 2025 and if a Rule 2004 Examination is not held on and after May 6, 2025.

8/12/25:      Kroemmelbein, through Attorney Walter Weir, filed a Motion to Vacate Sanction and Discovery Orders [ECF No. 419]. Kroemmelbein averred to the Court that Attorney William R. A. Rush had "misadvise[ed] her about this matter" and had a conflict of interest, and "gave erroneous and inappropriate advice to Ms. Kroemmelbein and likely committed malpractice in not asserting her Fifth Amendment rights" in response to the Rule 2004 discovery. [Id. ¶¶ 22, 33].

10/21/25:     The Court entered an order, granting Kroemmelbein's motion and vacating its orders at ECF No. 289 and 352. [ECF No. 480].

In response to a Rule 2004 subpoena in the Main Case, Redmond refused to produce State and federal income tax returns for the years 2023 and afterwards, and made false representations to the Court and gave false testimony in his examination to the effect that C. Malcolm Smith, III and C. Malcolm Smith & Company, P.C., were assisting Redmond in preparing and filing such returns. Following his Rule 2004 examination in the Main Case, Redmond quietly terminated the services of Smith and his accounting firm while withholding such income tax returns from Jordan and from Trustee Lynn Feldman.

In adversary proceeding No. 25-00254, Attorney William R. A. Rush participated in a deposition in this proceeding that occurred on March 9 and 16, 2026. Attorney Rush additionally produced 533 pages of documents in connection with a Rule 45 subpoena for documents for the deposition. Despite having notice sent to him, Mr. Redmond did not appear for the deposition.

In the instant case, Kroemmelbein had retained Walter Weir, Esquire, to object to the Rule 2004 examination on her behalf under the Fifth Amendment privilege against self-incrimination. On October 3, 2025, and through Attorney Weir, Kroemmelbein certified in response to a Rule 2004 subpoena in the Main Case the following:

20.     All monthly statements for all your accounts which you cause, or permit, to be used by Alan Chirstopher Redmond and beginning five years before September 3, 2024 to the present.

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

\* \* \*

32.     All federal income tax returns, with all schedules, filed for all businesses entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following:

\* \* \*

b.     ABN Network, LLC.

\* \* \*

x.     Seguro Medico, LLC.

\* \* \*

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

\* \* \*

36.     All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

\* \* \*

41.     All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial authority, or control, or which you filed with a government agency on behalf of another person.

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

[Ex B. (emphasis added)].

8

For Kroemmelbein to conceal any information regarding ABN Network, LLC, in particular, was significant and material because it was the sole source of revenue for Seguro Medico, LLC, holding contract receivables from insurance carriers for the work performed by Seguro Medico, and therefore very integral to Redmond's business.

The documents from Attorney Rush show that Kroemmelbein lied and her counsel knew that at all times. By e-mail dated September 23, 2025, which she sent to Rush and Weir, Kroemmelbein went through each enumerated request in the same Rule 2004 subpoena. For Item No. 20, she wrote, "I do not have access to **all** these accounts. Many have been closed, ***many have been opened due to the FBI involvement***." [Ex. C, at Bates No. 75-76 (emphasis added)]. For Item No. 32, she noted that she was a "partner" for ABN Network, LLC and 96% owner of Seguro Medico, LLC, and she wrote, "**I will contact the accountant to request records**." [Id. at 77 (emphasis added)]. For Item No. 36, she wrote, "I would need to dig up those documents as I do not have records. I have no contracts in my possession." [Id. at Bates No. 78]. For Item No 41, she wrote, "To be discussed. I have no contracts in my possession." [Ex. C, at Bates No. 78-79].

Redmond responded to Kroemmelbein's e-mail that same day:

These answers would not allign (sic) with discovery and testimony that have been presented by attorney rush, [Bill] mcswain, [David] heim to fbi [Federal Bureau of Investigations], George [Bochetto] to fbi, mcswain to fbi, you to attorneys et etc.

Mr. Weir/Shannon I would recommend you consult with myself, rush, George Bochetto or David hiem—former personal counsel and former counsel for seguro [Medico].

[Ex. C, at Bates No. 74 (alteration added)]. Kroemmelbein responded an hour later, "I would fully agree, and trust the previous council (sic)." [Id.].

In his deposition, Bill Rush produced a bounced check from ABN Network, LLC, signed by Kroemmelbein, demonstrating that she's a signatory to the account. [Ex. A, Rush Dep. (vol. 2)

Tr. 49:11-25]. From this check, he testified that her responses to the Rule 2004 subpoena were false because she "has the control or flatout ownership of all the entities and all of the properties at which such documents would be kept." [Ex. A, Rush Dep. (vol. 2) Tr. 37:1-24]. Rush testified that he personally met with Kroemmelbein and Redmond at their home in 2025 and then and there reviewed income tax returns for Seguro Medico, LLC, that was in the house. [Id. at 46:22-25 to 1-13]. Kroemmelbein's responses to the contrary were therefore false. [Id.].

Rush also produced e-mails which demonstrate that Kroemmelbein regularly accesses business bank accounts. On March 17, 2025, Kroemmelbein e-mailed Rush, Bochetto, and Heim, and informed them, "Bill you should take the lead *as I am balancing cashflow* and you have been paid the most this year." [Ex. C, at Bates No. 69 (emphasis added)].

The e-mails produced by Rush also show that Kroemmelbein was actively involved in this case since the Involuntary Petition was filed in September of 2024, and the same reflect her open contempt for this Court and its process. On February 1, 2025, after learning that the Court had authorized Rule 2004 subpoenas for registered agent and other business records, Kroemmelbein sent an e-mail to Attorneys Heim, Bochetto, Rush, Norman Valz, and Michael McCarrie in Media, Delaware County. She said, "I have been consulting with my husband and What I want to have us do is: Sue each registered agent. Sue little Mr. Reedy (sic). And of course sue the court, in particular Ms. Mayer, who Alan and now I, am not a fan of. She's a Temple grad I see (94th). Lehigh doctorate over here (Top 50)." [Ex. C, at Bates No. 60].

On February 3, 2025, Kroemmelbein submitted an e-mail to Attorneys Heim, Rush, and McCarrie. "I am writing to formally authorize my spouse, Alan Redmond, to communicate with you and your firms on my behalf regarding any legal matters. I trust Alan's judgment entirely, *and there are no limitations to this authorization to act in my stead*." [Ex. C, at Bates No. 62

10

(emphasis added)]. As she artfully clarified to Attorney Rush on March 10, 2025, "I am not making any company wide operational decisions nor have I had those decisions in years past." [Id. at 65]. Precisely. Because it's really *Redmond's companies* and it's *Redmond* who's working for free while living out of "her" bank accounts that he controls.

Throughout this proceeding, Kroemmelbein had wanted to testify. On September 11, 2024, Kroemmelbein told Rush, "I believe it may be getting to the point where I need to intervene in some fashion here on behalf of the company, Arthur [Walsh, Jr.] and Seguro [Medico]." [Ex. C, at Bates No. 53]. On December 18, 2024, Rush conferred with Attorney David Heim, asking him to raise motions to quash the Rule 2004 discovery on behalf of the other non-parties. Rush told Heim, "I think a lot of 5th Amendment issues are here." [Id. at 56]. On January 28, 2025, Kroemmelbein e-mailed Rush, "Please send me the Objections [to the subpoena] for review, all of them please." [Id. at 59]. Rush complied with her request. [Id.]. On April 28, 2025, Kroemmelbein texted Attorney Bill Rush, "When do I need to show for deposition[?]" [Id. at 47].

Before Attorney Weir's involvement, Kroemmelbein had no concern about invoking the Fifth Amendment because she was confident she did nothing wrong which would implicate her in the criminal action[1] in the U.S. District Court: "I am aware of the indictment counts being false. I have read Malcom [Smith's] letter. Either Malcolm fucked up or the FBI have fucked up, either way, we did not, and that will be up to this team to resolve quickly." [Ex. C, at Bates No. 61]. In his deposition, Attorney Rush explained that, before Weir was retained, it was Rush's plan to have Kroemmelbein appear for the examination and permit to answer any biographical-related questions and her identification, and he would otherwise have raised Fifth Amendment objections on a

---

[1] Crim. A. No. 5:24-CR-00376.

question-by-question basis. [Ex. A, Rush Dep. (vol. 2) 159:16-25 to 160:1-3)]. This, however, did not permit Kroemmelbein to (1) withhold documents relative to bank accounts titled in her name and (2) withhold her testimony to matters she admitted in open court. [See ECF No. 437].

### C.     Relief Requested.

Jason Scott Jordan requests that the Court render a final judgment under 11 U.S.C. § 727, declaring that Alan Christopher Redmond is denied a discharge as applied to the Chapter 7 petition at Case No. 24-13093. In accordance with procedural rules, Jordan intends to move for ancillary relief if he prevails.

### D.     Legal Issues Presented.

(1)     Under 11 U.S.C. § 727(a)(2), Redmond, with the intent to hinder, delay, or defraud a creditor, Trustee Lynn E. Feldman, or both, transferred, removed, destroyed, mutilated, or concealed, or has permitted others to do the same (including Shannon Kroemmelbein), Redmond's property either one-year before the September 3, 2024 filing of the Involuntary Petition for Relief or anything after the filing of such Involuntary Petition.

(2)     Under 11 U.S.C. § 727(a)(3), Redmond concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information (including books, documents, records, and papers) from which his financial condition or business transactions might be ascertained.

(3)     Under 11 U.S.C. § 727(a)(4), Redmond knowingly and fraudulently made false oaths, false accounts, presented or used false claims, or withheld from Trustee Lynn E. Feldman recorded information (including books, documents, records, and papers) relating to Redmond's property and financial affairs.

(4) Under 11 U.S.C. § 727(a)(5), Redmond failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities.

(5) Under 11 U.S.C. § 727(a)(6), Redmond has refused to obey a lawful order of the Court or to respond to a material question approved by the Court or to testify.

(6) Under 11 U.S.C. § 727(a)(7), Redmond has committed any of the foregoing concerning an insider and on or within one year before the September 3, 2024 filing of the Involuntary Petition, during the case itself, or under the Bankruptcy Act.

### E. Witnesses' Names and Addresses.

**(1) Individuals**.

George Bochetto, Esquire
Bochetto & Lentz, P.C.
1524 Locust St.
Philadelphia, PA 19102

Katherine Downing, Esquire
918 Morgantown Rd.
Reading, PA 19607

Tonya Hatmaker
By and through Seguro Medico, LLC

David Heim, Esquire
Bochetto & Lentz, P.C.
1524 Locust St.
Philadelphia, PA 19102

Shannon Kroemmelbein
2 High Rd., Wyomissing, PA 19610

Stephanie F. Miller
485 Knorr Road, Gettysburg, PA 17325

Alan Christopher Redmond
2 High Rd., Wyomissing, PA 19610

William R. A. Rush, Esquire

38 N. 6th St.
Reading, PA 19606

John Sardella
C. Malcom Smith & Company, P.C.
3020 Penn Ave.
Reading, PA 19609

C. Malcolm Smith, III
2120 Bressler Dr.
Wyomissing, PA 19610

Norman M. Valz, Esquire
441 Irvington Rd.
Drexel Hill, PA 19026

Arthur W. Walsh, Jr.
2400 Lincoln Ave.
Reading, PA 19609

Walter Weir, Esquire
Weir LLP
The Widener Building, 5th Floor
1339 Chestnut St.
Philadelphia, PA 19107


## (2)   Registered Agents (through Representatives).

A. Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Harvard Business Services, Inc.
16192 Coastal Highway
Lewes, DE 19958

Northwest Registered Agent, LLC
7901 4th St. N, Suite 300
St. Petersburg, FL 33702

Paracorp Incorporated
2804 Gateway Oaks Dr.
Sacramento, CA 95833

**(3)     Other Legal Entities (through Representatives).**

The following are in addition to those identified by Redmond on his Schedules in the Main

Case, inclusive of putative creditors, which are incorporated by reference.

| Name | Jurisdiction Where Formed or Domesticated (if Known) |
|---|---|
| ABN Network, LLC | Florida |
| Alan Redmond Charitable Foundation | Pennsylvania |
| ARC Realty, LLC | Delaware |
| ARC Realty 1, LLC | Delaware |
| Bene Market, LLC | Delaware |
| Benefits Now, LLC | Michigan |
| Benefitz Plus, LLC | |
| Digital-Bridge, LLC | Wyoming |
| Digital Bridge Network Corporation | Wyoming |
| Digital Principles Corporation | Wyoming |
| Endless Horizons, LLC | Wyoming |

15

| | |
|---|---|
| Friends of Hurst, LLC | Pennsylvania |
| Frontera, LLC | |
| The Leads House, LLC | |
| National Brokers of America, Inc. | Ohio |
| NextGen Leads, LLC | Nevada |
| Phase 1 Technology, LLC | Florida |
| Q H Quick Health | |
| Red Horizon, LLC | Wyoming |
| Seguro Medico, LLC | Delaware |
| Triquetra United, LP | Delaware |
| The Turner House of Reading, LLC | Pennsylvania |
| The Turner House of Reading 1, LLC | Delaware |
| U.S. Consolidation | Delaware |
| U.S. Trifecta Limited Liability Company | Pennsylvania |

### (4)    Banks, Depositories, and Lenders.

M&T Bank

Mid Penn Bank

NP, Inc.

Wells Fargo Bank

World Business Lenders, LLC

**(5)      Additional Witnesses.**

(1)     Jordan reserves the right to call any witnesses identified in any other party's Rule 26(a)(3)

disclosure.

(2)     C. Malcolm Smith & Company, P.C.
        3020 Penn Ave.,
        Reading, PA 19609

**(6)      Expert Witnesses.**

Khody R. Detwiler, Forensic Document Examiner.  Mr. Detwiler's September 29, 2024

Report of Examination, Comparison Chart Illustrations, and his Curriculum Vitae were provided

to Redmond's counsel in the Main Case. Mr. Detwiler testified before the Court in the Main Case

on October 1, 2024, and such transcript and hearing exhibits are designated as part of this

disclosure. As shown in the Certificate of Service, a thumb drive containing PDF copies of Mr.

Detwiler's Report, Comparison Chart Illustrations, CV, and the October 1, 2024 transcript with

exhibits are hereby served by mail on Mr. Redmond a second time.

**F.      Exhibit List.**

Due to the voluminous nature of the documents in this case, that motions to compel will be

contemporaneously filed, and the non-participation of Redmond (including Redmond's refusal to

accept U.S. mails from Cornerstone Law Firm, LLC), Jordan respectfully requests to be excused

from Local Rule 2017-1(b)(9) because it appears to serve no apparent purpose as applied to a *pro*

*se* defendant who refuses to participate in the proceeding and thereby works an unnecessary

expense on Jordan. In the alternative, Jordan requests an enlargement of time to supplement this

Statement if requested by Redmond at the scheduled June 23rd pretrial conference.

Without waiving the foregoing, Jordan makes reliance on the following:

(1)     All documents provided by William R. A. Rush in response to a subpoena in the instant proceeding, Bates Nos. 000001 to 000533.

(2)     All transcripts from the Main Case, including Redmond's testimony as follows:

- September 18, 2024

- October 1, 2024

- November 22, 2024 Section 341 Examination

(3)     All documents obtained by subpoena in the Main Case which were provided to Redmond's counsel in the Main Case, including the following:

- Alan C. Redmond (Bates Nos. Debtor 2004 – 0001 to 0378)

- C. Malcolm Smith & Company, P.C. and C. Malcom Smith, III

- Katherine Downing, Esquire

- Norman M. Valz, Esquire

- Stephanie F. Miller

- Corporation Trust Company (Bates Nos. CT_0001 to CT_0029)

- Delaware Department of State (approx. 81 pages)

- Pennsylvania Department of State (approx. 39 pages)

- A Registered Agent, LLC (Jan. 22, 2025) (approx. 247 pages)

- Harvard Business Services, Inc. (approx. 46 pages)

- Northwest Registered Agent (Jan. 21, 2025) (approx. 162 pages)

- Mid Penn Bank records (relative to Redmond, Bene Market, Seguro Medico, ARC Realty LLC, Friends of Hurst, and account opening documents for Shannon Kroemmelbein and Alan C. Redmond)

(4)     From the Main Case, Jordan intends to use the Debtor's Schedules, original and amended, the monthly operating reports, and Debtor's Motion to Dismiss with exhibits, including the Tonya Hatmaker Affidavit with all attachments [ECF No. 20-1]. Jordan may introduce any pleading or paper filed in the Main Case.

(5)     Jordan intends to request judicial notice of public records under F.R.E. 201. That includes other court proceedings where Alan Christopher Redmond is a party, such as Docket No. 25-DR-00324 in the Berks County Court of Common Pleas, as well as corporate filings on file with a governmental agency, such as departments of State.

(6)     Jordan may rely on any documents identified in any other party's Rule 26(a) disclosure.

(7)     Any documents that may be produced in the instant proceeding from outstanding Civil Rule 45 subpoenas that were served on M&T Bank and Wells Fargo Bank, copies of such subpoenas were mailed to Mr. Redmond.

### G.     Page and Line Designations.

Due to the numerosity of transcripts from the Main Case, that bank records are in the process of being compelled, and the non-participation of Redmond (including Redmond's refusal to accept U.S. mails from Cornerstone Law Firm, LLC), Jordan respectfully requests to be excused from Local Rule 2017-1(b)(10) because it appears to serve no apparent purpose as applied to a *pro se* defendant who refuses to participate in the proceeding and thereby works an unnecessary expense on Jordan. In the alternative, Jordan requests an enlargement of time to supplement this Statement if requested by Redmond at the scheduled June 23rd pretrial conference.

Without waiving the foregoing, we incorporate the page and line designations presented in Subpart B, supra, and that Redmond may assume that he will be called to the witness stand and impeached with each and every statement he made in a prior appearance before this Court in the

Main Case, during his Section 341(a) examinations, and from his Rule 2004 examination—and that the foregoing testimony by Redmond may be admitted as substantive evidence.

**H.      Additional, Pre-Trial Motions.**

Redmond did not respond to written discovery and a motion to compel will be submitted. We additionally served a subpoena for records on Wells Fargo Bank, which the Bank did not respond to, and a motion to compel will be submitted.

**I.      Estimated Trial Time.**

Three days are requested, if Redmond participates.

**J.      Futility of Settlement Discussions.**

The statute of U.S.C. § 727 neither authorizes settlements nor permits the Debtor to partially waive dischargeability for some creditors rather than all creditors. Section 727 is an all-or-nothing proposition which renders settlement discussions a futile endeavor.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: June 15, 2026          By:      /s/ Joel A. Ready
                                                Joel A. Ready, Esquire
                                                PA Attorney I.D. No. 321966
                                                8500 Allentown Pike, Suite 3
                                                Blandon, PA 19510
                                                (610) 926-7875